# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**BOBBY ANTOINE SUTTON,**
      **Petitioner,**

                                     **Criminal Action No. 2:02cr65**
**v.**                                      **Civil Action No. 2:05cv91**

**UNITED STATES OF AMERICA,**
      **Respondent.**

## ORDER AND OPINION

Currently before the court is Bobby Antoine Sutton's petition to vacate, set aside or correct a sentence previously imposed, filed pursuant to Title 28, United States Code, Section 2255.  The petition is timely within the requirements of the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (1996).  The petitioner argues the following: (1) that he received ineffective assistance of counsel because his attorney failed to properly prepare him to testify, failed to vigorously cross-examine law enforcement officials testifying against him, and failed to raise numerous objections related to sentencing; (2) that his sentence was unconstitutionally enhanced based on crimes for which he was not found guilty; (3) that there was prosecutorial misconduct; and (4) that petitioner was the subject of an illegal search and seizure.  In an Order issued on July 7, 2005, this court ordered counsel for the United States to file an answer or other pleading responding to petitioner's claims.  After examining the petition, the government's response, and petitioner's reply filed subject to defect, the court declines to hold an evidentiary hearing, finding that the case file, along with the court's recollection of the case, conclusively demonstrate that the petitioner is not entitled to relief.  See R. Governing § 2255 Proceedings in U.S. Dist. Cts 8(a); Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

### I. Factual and Procedural History

On April 9, 2002, a federal grand jury returned a two-count indictment charging petitioner with possessing cocaine base with intent to distribute and possessing a firearm in furtherance of a drug trafficking crime. The petitioner entered a plea of not guilty, and a trial by jury was conducted on June 1 and 2, 2002. The two-day jury trial ended in a mistrial as the jury was unable to reach a verdict.

On September 19 and 20, 2002, a second jury trial was conducted and petitioner was again charged with two counts: Count One, possession with intent to distribute 50.93 grams of cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(iii); and Count Two, possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1). At the close of evidence in the September trial, the petitioner renewed his previous Motion for Judgment of Acquittal as to both counts of the indictment. The court denied the motion with respect to count one, but deferred a ruling on the motion as to count two, pursuant to Federal Rule of Criminal Procedure 29(b). On September 20, 2002, the jury returned a verdict of guilty on both counts of the indictment. The court subsequently denied the petitioner's motion as to count two, and the petitioner was later sentenced to two hundred and thirty-six months imprisonment on the drug charge, and sixty months on the firearm charge, to run consecutively. The petitioner appealed his sentence on count two, claiming that the court had erred in denying his Motion for Judgment of Acquittal, and on February 13, 2004, the Fourth Circuit Court of Appeals issued an unpublished opinion affirming Sutton's conviction.

The instant petition was filed on February 15, 2005. On July 7, 2005, the court ordered

the government to file a response within 60 days.  Accordingly, on September 2, 2005, the

government filed its response.  On November 14, 2005, the petitioner filed, subject to defect,[1] a

reply to the government's response.  As such, the petition is ripe for review.

## II. Standard of Review

A petitioner collaterally attacking his sentence or conviction bears the burden of proving

that his sentence or conviction was imposed in violation of the Constitution or laws of the United

States, that the court was without jurisdiction to impose such a sentence, that the sentence

exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral

attack.  28 U.S.C. § 2255.   A motion collaterally attacking a petitioner's sentence brought

pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the

evidence.  Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958); United States v. Allgood,

48 F. Supp. 2d 554, 558 (E.D. Va. 1999).

A collateral attack under § 2255 is, by design, far more limited than an appeal as the

"usual and customary method of correcting trial errors is by appeal."  Allgood, 48 F. Supp. 2d at

558; see United States v. Frady, 456 U.S. 152, 165 (1982) ("[A] final judgment commands

respect.  For this reason, we have long and consistently affirmed that a collateral challenge may

not do service for an appeal.").  Because a collateral challenge is not intended to serve the same

functions as an appeal, the doctrine of procedural default bars the consideration of a claim that

was not raised at the appropriate time during the original proceedings or on appeal.  There are

---

[1] Petitioner's reply was defective as it was both filed after the twenty-day deadline set by the court in its previous order and filed without a certificate of service.  However, notwithstanding such defects, the court has read and considered the petitioner's reply.

three instances, however, when a procedurally defaulted claim may be considered on collateral

review.[2]  The first instance is based on a test articulated by the Supreme Court in United States v.

Frady, 456 U.S. 152, 165 (1982), and requires a petitioner to show both: (1) cause; and (2) actual

prejudice, resulting from the alleged error.  Id. at 167; see also Wainwright v. Sykes, 433 U.S.

72, 84 (1977); United States v. Mikalajunas, 186 F.3d 490, 492-95 (4th Cir. 1999).  To show

"cause," the petitioner's claim "must turn on something external to the defense, such as the

novelty of the claim or a denial of effective assistance of counsel."  Mikalajunas, 186 F.3d at 493

(quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).  To show "actual prejudice," the

petitioner must demonstrate "that the error worked to his 'actual and substantial disadvantage,'

not merely that the error created a 'possibility of prejudice.'"  Satcher v. Pruett, 126 F.3d 561,

572 (4th Cir. 1997) (quoting Murray, 477 U.S. at 494).  The Frady test presents "a significantly

higher hurdle than would exist on direct appeal."  Frady, 456 U.S. at 166.

Alternatively, the second instance when a procedurally defaulted claim is properly

considered by the court on collateral review is when a petitioner can demonstrate that he is

actually innocent.  Upon such a showing, the court should issue a writ of habeas corpus in order

to avoid a miscarriage of justice, regardless of whether the claim was procedurally defaulted.

See Schlup v. Delo, 513 U.S. 298, 321 (1995).  However, the "actual innocence" exception has

been limited by the Fourth Circuit Court of Appeals to apply only in capital cases or cases where

the alleged error results in the application of recidivist enhancements.  Mikalajunas, 186 F.3d at

---

[2] A petitioner's procedural default may be disregarded in appropriate circumstances as it
is neither a constitutional nor statutory requirement, but rather is a judicial doctrine applied in
order to respect the finality of judgments and to conserve judicial resources.  Massaro v. United
States, 538 U.S. 500, 504 (2003).

494-95.  Furthermore, the Supreme Court has called into doubt the extension of the actual

innocence exception beyond capital cases.  See Dretke v. Haley, 541 U.S. 386, 392-94 (2004).[3]

        In addition to the Frady test and actual innocence exceptions, a claim founded on the

allegation of ineffective assistance of counsel may also be properly raised in a § 2255 motion

even if such claim was not preserved at the trial level or raised on direct appeal.[4]  United States v.

DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).  This exception to the procedural default rule

exists because, on appeal, both petitioner's and defense counsel's positions may not be

adequately established on the record.  Id. at 120 (finding that ineffective assistance is "more

properly raised in a § 2255 habeas motion for collateral relief" where both the petitioner and

counsel can adequately document their positions).  As a result, an ineffective assistance claim

brought pursuant to § 2255 is not required to meet the Frady "cause and actual prejudice" test.

DeFusco, 949 F.2d at 120-21; Massaro, 538 U.S. at 504.  Rather, to succeed on collateral review,

ineffective assistance claims are required to meet the two part test established in Strickland v.

Washington, 466 U.S. 668, 686 (1984).  The Strickland test requires a petitioner to prove both:

(1) that his attorney's conduct fell below an objective standard of reasonableness; and (2) that the

---

[3] Although the Supreme Court in Dretke recognized that the "cause and prejudice standard is not a perfect safeguard" the Court also expressed "confidence that, 'for the most part, victims of fundamental miscarriage of justice will meet the cause-and-prejudice standard.'" Dretke, 541 U.S. at 394 (quoting Murray, 477 U.S. at 495-96).  The Supreme Court further defended its decision not to expand the "actual innocence" exception by noting that "the availability of ineffective assistance of counsel claims–either as a ground for cause or as a free-standing claim for relief– . . . safeguard[s] against miscarriages of justice."  Id.

[4] The Sixth Amendment provides, in relevant part, that: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  This constitutional requirement has been interpreted to include the right to the effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).

attorney's deficient performance caused him prejudice.  Strickland, 466 U.S. at 687-91.

Considering whether an attorney's conduct fell below an objective standard of reasonableness, the court should be "highly deferential" to counsel's strategic decisions made during the course of representation.  Under the standard established in Strickland, "there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance."  Kratsas v. United States, 102 F. Supp. 2d 320, 322 (D. Md. 2000) (citing Strickland, 466 U.S. at 688-89).  Likewise, evaluating counsel's conduct in retrospect requires "every effort be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986).  A petitioner meets his burden only if he can show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.

Turning to the prejudice prong, to satisfy the Strickland test a petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  The Supreme Court has defined reasonable probability as "a probability sufficient to undermine confidence in the outcome."  Id.  Most importantly, the burden of proof lies with the petitioner and petitioner's conclusory statements will not suffice to overcome such burden.  United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005) ("[U]nsubstantiated and largely conclusory statements fall far short of carrying [petitioner's] burden of persuasion as to the two elements of the test outlined in Strickland."); see United States v. Allgood, 48 F. Supp. 2d 554, 559 (E.D. Va. 1999).

### III. Discussion

#### A. Ineffective Assistance of Counsel

As explained in the previous section, although a collateral challenge alleging ineffective assistance of counsel is properly raised for the first time in a § 2255 petition, in order to succeed on such claim the petitioner must establish both prongs of the test set forth in <u>Strickland</u>, 466 U.S. at 687-91.  Here, the petitioner has failed to meet this burden; therefore, his claim for relief based on ineffective assistance is denied.

Petitioner's claim fails on its face because petitioner merely makes broad generalizations and conclusory statements about his counsel's performance and does not highlight any specifics about his attorney's allegedly unprofessional conduct.  Likewise, the petitioner does not set out any concrete prejudice that he suffered.  Petitioner's motion states that he received ineffective assistance of counsel because "his trial counsel did not properly prepare him to testify at his own trial, . . . failed to vigorously cross-examine law enforcement officials testifying against him, and failed to interpose numerous specific sentencing-related objections."  Petitioner's Motion p. 5(A)(A).  Petitioner's conclusory statements and unsubstantiated accusations will not suffice to overcome his burden to establish both deficient performance and the likelihood that but for such deficiencies the outcome would be different.  <u>See</u> <u>Allgood</u>, 48 F. Supp. 2d at 559.

#### B. Unconstitutional Sentence Enhancement

Petitioner next claims that his sentence was unconstitutional because it was enhanced by sentencing factors that were not found by a jury beyond a reasonable doubt.  Petitioner alleges that, as a result of the Supreme Court's decisions in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>United States v. Booker</u>, 125 S.Ct. 738 (2005), his sentencing enhancements were

unconstitutional.

In Blakely, the Supreme Court extended its ruling from Apprendi v. New Jersey, 530 U.S. 466 (2000), which held that a judge may not increase a sentence above the statutory maximum unless that sentence is based on the factual findings of the jury or the admissions of the defendant. Apprendi, 530 U.S. at 483-84. The Court in Blakely reasoned that, for the purposes of Apprendi, the statutory maximum is not the maximum possible sentence for a crime, but rather the maximum sentence that could be imposed based on the factors that were determined beyond a reasonable doubt by a jury or admitted by the defendant. Blakely, 542 U.S. at 303-04. The Court's ruling in Blakely, however, addressed the sentencing guidelines used by the state of Washington, and specifically declined to address whether the holding impacted the application of the federal sentencing guidelines. Id. at 305 n.9.

Subsequently, in Booker, the Supreme Court applied the holding of Blakely to the federal sentencing guidelines, determining that the mandatory nature of the guidelines violated the Sixth Amendment for the reasons stated in Blakely. However, rather than invalidating the guidelines the Court altered their application, making the guidelines advisory premised on the belief that Congress would have preferred an advisory guideline scheme to none at all. Booker, 125 S.Ct. at 756, 764. Thus, it is the Court's decision in Booker, as opposed to Blakely, that is applicable to petitioner's sentence under the federal sentencing guidelines.

Because petitioner's sentence became final prior to the Court's decision in Booker, this court must determine if the rule announced in Booker applies retroactively to the petitioner.[5]

_____

[5] A conviction is final if "the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition of certiorari ha[s] elapsed." Teague v. Lane, 489 U.S. 288, 295 (1989) (quoting Allen v. Hardy, 478 U.S. 255, 258 n.1 (1986)). Petitioner's appeal was

8

Retroactivity comes into play when "a criminal defendant has been found guilty and [his] conviction has become final prior to announcement of the new rule." Lilly v. United States, 342 F. Supp. 2d 532, 535 (W.D. Va. 2004). A decision announces a new rule if the "result was not dictated by precedent existing at the time the defendant's conviction became final." Teague v. Lane, 489 U.S. 288, 301 (1989). Although Blakely and Booker stemmed from the Court's holding in Apprendi, the result reached in Booker was not dictated by precedent and the application of Apprendi to the sentencing enhancements in the federal guidelines was not foreseen by the courts of appeals. See, e.g., United States v. Sanders, 247 F.3d 139, 150 (4th Cir. 2001) (holding that the court can enhance sentences on the basis of judicially determined facts so long as the statutory maximum is not exceeded); Lilly, 342 F. Supp. 2d at 537 n.3 (citing similar decisions from other courts of appeals). Likewise, the result in Booker was not apparent to all reasonable jurists, as four dissenting Justices in the Booker decision argued that the conclusion reached by the majority was not compelled by Apprendi or Blakely. See United States v. Morris, 429 F.3d 65 (4th Cir. 2005).

Assuming then, that the decision announced in Blakely and extended to the federal sentencing guidelines in Booker was a new rule, there is only a narrow class of cases to which the new rule would apply retroactively on collateral review. United States v. Morris, 429 F.3d 65, 69 (4th Cir. 2005); Schriro v. Summerlin, 542 U.S. 348, 351 (2004). To establish retroactive application, the petitioner must either show that the new rule is substantive, rather than procedural, or that the new rule is a "watershed rule[] of criminal procedure." Summerlin, 542

decided on February 13, 2004; therefore his sentence appears to have been final when Blakely was decided in June of 2004, and petitioner's sentence clearly became final prior to the Supreme Court's issuance of Booker in January of 2005.

U.S. at 351-53 (quoting <u>Teague</u>, 489 U.S. at 311).

It is undisputed that the rule announced in <u>Booker</u> is procedural rather than substantive. No conduct that was forbidden prior to <u>Booker</u> is permitted today.  Likewise, <u>Booker</u> does not involve the substantive determination of what conduct is lawful or unlawful.  Rather, <u>Booker</u> only regulates "the <u>manner of determining</u> the defendant's culpability."  <u>Summerlin</u>, 542 U.S. at 353.  Moreover, the rule announced in <u>Apprendi</u>, upon which <u>Booker</u> relied, has been determined to constitute a procedural rule that does not apply retroactively on collateral review.  <u>See</u> <u>Summerlin</u>, 542 U.S. at 358; <u>Sanders</u>, 247 F.3d at 151 (finding that the rule announced in <u>Apprendi</u> does not apply retroactively on collateral review).

Because <u>Booker</u> announced a change in a procedural rule, it should be applied retroactively only if it falls within the "small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  <u>United States v. Morris</u>, 429 F.3d 65, 69 (4th Cir. 2005).  In order to constitute such a rule, the decision must "so seriously diminish[] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach."  <u>Summerlin</u>, 542 U.S. at 355-56 (citations omitted).  The Fourth Circuit has recently held that the rule announced in <u>Booker</u> is not such a watershed change.  The Fourth Circuit explained:

> [W]e conclude in any event that the <u>Booker</u> rule is not a watershed rule.  As we have noted, the practical net result of <u>Booker</u> is minimal. . . . '<u>Booker</u> does not in the end move any decision from judge or jury, or change the burden of persuasion. The remedial portion of <u>Booker</u> held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guidelines system has some flexibility in application.  As a practical matter, then, petitioners' sentences would be determined the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a 'watershed' change that fundamentally improves the accuracy of the

criminal process.'

Morris, 429 F.3d at 72 (quoting McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005)).  This determination is in accord with numerous other courts that have addressed the issue of retroactivity, either in the immediate wake of the Blakely decision, or following the more recent decision in Booker.  See Lilly, 342 F. Supp. 2d at 538-39 n.5 (citing such cases).

Petitioner's reliance upon the rule outlined in Blakely and Booker is misplaced.  Blakely simply does not apply to sentencing under the federal guidelines.  Furthermore, the Fourth Circuit has explicitly held that Booker does not apply retroactively; thus, Booker is not applicable to petitioner's sentence.  Although petitioner's "cause" for failing to assert a Booker claim earlier is that Booker had not been decided at the time of his conviction or appeal, the fact that Booker was never applicable to the petitioner demonstrates that he suffered no prejudice. Therefore, petitioner's claim premised on unconstitutional enhancements to his sentence is denied.

### C. Prosecutorial Misconduct

Petitioner's § 2255 claim based on prosecutorial misconduct, similar to his ineffective assistance claim, fails to present detail beyond unsubstantiated allegations.  As discussed in Part II above, a collateral challenge is not intended to serve the same functions as an appeal. Therefore, in order to succeed on collateral review on a claim not previously raised, the petitioner must establish both prongs of the cause and actual prejudice test outlined in United States v. Frady, 456 U.S. 152, 165 (1981).

The petitioner's prosecutorial misconduct claim alleges that the government not only allowed a witness to change her testimony from the petitioner's first trial to the petitioner's

second trial, but that the government induced the witness to change her story by a grant of

immunity and by threatening to take away custody of her only child if she did not agree to perjure

herself on the stand.  Specifically, the petitioner alleges that a witness, Ms. Baker, who was also a

co-defendant, stated at petitioner's first trial that she had seen the petitioner with a silver gun,

whereas at the second trial she stated that she could not remember what color the gun was.[6]

However, even if the petitioner correctly characterizes the witness's testimony at the first trial,

the petitioner is arguing on collateral review what should have been argued at trial or on appeal.[7]

Therefore, the petitioner is required to meet the Frady test to overcome his procedural default.

   Petitioner's conclusory statements and unsubstantiated accusations will not suffice to

overcome his burden to establish both cause and actual prejudice for failing to raise this matter in

a prior proceeding.  The petitioner has not provided any actual nor circumstantial evidence to

support what appears to be a baseless conjecture.  The government denies that the witness, Ms.

Baker, was ever threatened and states that she was not given immunity.[8]  Although the petitioner

states in his reply, filed subject to defect, that he  "knows for a fact" that Ms. Baker was given

immunity and that she was threatened by the government, he does not explain how he knows this

or what evidence he may have to prove it.  Furthermore, the petitioner claims that the transcripts

---

[6] The transcript from the second trial confirms that the witness provided no description of
the gun; rather she stated that she did not remember its color.  See Transcript at 146.

[7] Whether or not the petitioner was previously aware of the misconduct he now alleges,
the fact that the witness's testimony was allegedly different from the first to the second trial
would have been immediately apparent at the time of the second trial.

[8] Furthermore, the question regarding the color of the gun was asked by the petitioner's
counsel, not the prosecution, which substantially weakens petitioner's claim that the government
induced the witness to change her testimony.

of petitioner's first and second trials would prove both a grant of immunity and a threat, but that he has been denied these transcripts because of his indigent status.[9]

The petitioner's claim that he was unfairly denied transcripts is inaccurate because he was previously provided a transcript of both his second trial and his sentencing.  Furthermore, on January 28, 2005, in response to a request made by the petitioner, this court mailed a letter to petitioner explaining that if he "file[s] the appropriate motion and there is good cause . . . to prepare the transcript of the first trial, this court will certainly consider" having the transcript prepared.  However, this court never received a request or motion attempting to show good cause to have such transcript prepared, and the petitioner cannot establish prosecutorial misconduct solely on the claim that factual support exists but that he has no access to it.  The petitioner cannot make an end run around the requirement that "good cause" be shown by never requesting the transcript and then arguing pursuant to a § 2255 motion that he is unfairly disadvantaged for not having the transcript.  For the reasons discussed above, the petitioner's claim of prosecutorial misconduct fails on its face.

### D. Illegal Search and Seizure

The petitioner again provides no explanation or factual support explaining why he should be afforded relief on collateral review based on an illegal search and seizure.  The petitioner's entire claim for relief is limited to the conclusory statement that "the residen[ce] the defendant and co-defendant were located at" was searched illegally[10] and a cite to a few cases which stand

---

[9] A review of the transcript of the second trial as well as the case file does not reveal a grant of immunity nor a threat from the government.

[10] Petitioner's reply, filed subject to defect, attempts to add some detail to his previous claim and argues that he was "only visiting" the home that he alleges was illegally searched and

for the proposition that a petitioner is not foreclosed from seeking federal habeas review based on the failure of counsel to seek suppression of illegally obtained evidence. Although the petitioner's caselaw cites appear accurate, a petitioner may not succeed on collateral review without making some showing that the search was conducted illegally. Again, the petitioner's unsubstantiated accusations and conclusory statements fail to meet petitioner's burden. Furthermore, examination of the transcript of petitioner's second trial rebuts petitioner's allegations that the Norfolk Police Department did not have consent to search the home and that they did not have a search warrant. See Transcript p. 22-29, 93-95, 141-42; see also Govt Exhibit 1 (Search warrant for 8029 Redmon Road). Therefore, similar to petitioner's previous claims, petitioner's claim premised upon an illegal search fails on its face.

## V. Conclusion

For the reasons discussed above, the petition is **DENIED** and **DISMISSED**. Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is **DENIED**.

The Clerk is **REQUESTED** to send a copy of this Order to the petitioner and to the United States Attorney, Eastern District of Virginia, World Trade Center, Suite 1800, 101 West Main Street, Norfolk, Virginia 23510 .

The petitioner is **ADVISED** that he may appeal from this final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States

---

that the seizure of drugs at this home was in violation of his Fourth Amendment rights. However, petitioner's updated argument cuts against his claim of an unconstitutional search, as if he were only visiting he would be less likely to establish that he had an expectation of privacy and the right to prevent a search previously consented to by the permanent resident.

Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received

by the Clerk within sixty (60) days from the date of this Order.

It is so **ORDERED**.

_____ /s/

Jerome B. Friedman

UNITED STATES DISTRICT JUDGE

January  4 , 2006
Norfolk, Virginia